Joseph J. JACOBOWITCH, Relator,

v.

BELL & HOWELL and CNA Insurance Company, Respondents.

No. C1–86–1865.

Supreme Court of Minnesota.

April 24, 1987.

James E. Lindell, Minneapolis, for relator.

Mark A. Kleinschmidt, Minneapolis, for respondents.

## OPINION

AMDAHL, Chief Justice.

The Workers' Compensation Court of Appeals (WCCA), by majority decision, affirmed the compensation judge's award of permanent partial disability compensation but reduced the compensation judge's disability rating of 75% to 30%. We affirm in part, reverse in part, and reinstate the decision and order of the compensation judge.

Joseph J. Jacobowitch (employee) began working for Bell & Howell (employer) as a sales representative in 1976. By 1981, employee had been promoted to assistant spe-

cialist, had an 11–state territory, and was in charge of five sales managers. His employer thought highly of his performance in 1981. He was also happily married and involved in the extracurricular activities of his three children.

On December 11, 1981, employee was involved in a work-related automobile accident which resulted in an injury to his head. He was taken to St. Mary's Hospital in Rochester where he was admitted overnight. X-rays were taken and he was discharged in the morning. He then saw his family physician who, after observing him for a week, referred him to Dr. Thomas McPartlin, a neurologist.

On January 14, 1982, employee saw Dr. McPartlin, complaining of, among other symptoms, continual headaches since December 11, 1981. Dr. McPartlin diagnosed employee's symptoms as those of a postconcussive syndrome and ordered electroencephalograms (EEGs). The EEGs showed certain abnormalities which could have been produced by trauma.

Employee's headaches progressed into a chronic, frequent, and physically debilitating migraine-type headache which Dr. McPartlin diagnosed as post-traumatic vascular headaches. Vascular headaches are caused by dilation of arteries and are often precipitated by trauma although no one knows why. These headaches can be treated with medications which constrict the arteries. However, medications were discontinued in employee's case because they posed a risk of heart failure and he developed chest pain suggestive of angina.

Employee was also referred by the employer and its workers' compensation insurer to Dr. C. Camak Baker, a neurologist with a subspecialty in treatment of headaches. Dr. Baker was unsuccessful in treating employee's headaches and referred him to Dr. Loran Pilling who recommended employee enter his pain clinic. Employee entered the clinic and completed the 4–week in-patient program. He was involved with the clinic on an out-patient basis from December 21, 1982, until March 10, 1983. Dr. Pilling diagnosed depression.

Employee returned to the care of Dr. McPartlin who referred employee to a psychologist, Dr. John Boller, for his depression. Dr. Boller saw employee May 31, 1983. When Dr. Boller learned employee's wife was considering separating from him, Dr. Boller met with her to obtain her view of what was occurring. Dr. Boller learned from her that since the accident employee had been very depressed, complained about pain, and spent a lot of time indoors sitting on the couch and feeling sorry for himself. Following the headaches, he was usually depressed for the rest of the day; and since the headaches occurred 3 to 4 times per week, she found employee was depressed all of the time. Employee's wife told Dr. Boller that at first she tried to be supportive of him, but as time went on she was growing more and more impatient with his pain complaints, headaches, and lack of interest in the family activities. She had decided she did not want to live with him anymore. Employee and his wife ultimately separated and divorced. Dr. Boller made a diagnosis of major depressive disorder.

Shortly after employee's accident in December 1981, employee did return to work. In January 1982, employee received a letter of appreciation for his 1981 performance with employer. In late January 1982, employee was terminated. In November 1982, employee went to work for Abachi, Inc. as a sales manager. In 8 months he wrote no orders; he would miss 2 to 3 days at a time because of his headaches. Subsequently, employee worked 6 months at National Business Systems as a sales representative. He made no sales there. From January 1984 through December 1984, employee worked in his home making wooden handles for a back rubber. He made no profit in that venture.

From December 21, 1981, through March 18, 1983, employee was paid temporary total disability compensation. Then employer/insurer filed a notice of intention to discontinue benefits. In November 1983, employee entered into a stipulation whereby he was to receive $25,000 (less $5,200 attorney fees) in lieu of all claims for temporary total, temporary partial, permanent

total, retraining and rehabilitation benefits up to November 9, 1988. Employee was also to receive $5,000 as a full, final, and complete resolution of all claims for psychiatric/psychological care. The stipulation expressly left open employee's right to receive medical care other than psychiatric/psychological as well as his right to claim permanent partial disability. The stipulation was approved and an award was filed November 30, 1983.

On January 16, 1984, employee filed a claim for 75% permanent partial disability of the head. The matter was litigated before Compensation Judge David S. Barnett on August 29, 1985. In support of his claim, employee submitted the deposition of Dr. McPartlin who was of the opinion that employee suffered a 75% permanent partial disability as a result of the December 11, 1981, accident. Of the 75% total rating, Dr. McPartlin attributed 25% to 30% to the headaches alone. Employer/insurer offered depositions from Dr. Baker and Dr. Pilling. Dr. Baker was of the opinion that employee sustained no permanent partial disability although he did agree that if employee was suffering from vascular headaches 3 to 4 times per week, such headaches would be permanent. He also agreed that such headaches would be debilitating. Dr. Pilling was also of the opinion that employee had sustained no permanent partial disability because his depression and headaches were temporary conditions. Dr. Pilling did admit to having watched employee during his headache episodes and conceded that these headaches were disabling.

The compensation judge found that employee's headaches and depression were precipitated by his work-related car accident and that employee suffered a 75% permanent partial disability as a result. He further found that pursuant to Minn. Stat. § 176.021, subd. 3b (1986), the permanent partial disability was presently payable. On appeal, the WCCA (2-1) substituted a finding of 30% permanent partial disability. The WCCA also determined that permanent partial disability compensation was presently payable, finding that payment for temporary disability compen-

sation had been completed. The employer/insurer and the employee both have sought further review in this court claiming, respectively, that the WCCA erred in affirming the award of permanent partial disability compensation and in reducing the permanent partial disability rating.

■ 1. The first issue raised by this appeal is whether permanent partial disability compensation is presently payable under Minn.Stat. § 176.021, subd. 3 (1981), and/or subd. 3b (1986). Minn.Stat. § 176.-021, subd. 3 (1981), the law at the time of the injury, provided in part that "[c]ompensation for permanent partial disability shall be withheld pending completion of payment for temporary total and temporary partial disability...." Subdivision 3a provided for the timing of payment as follows:

Payments for permanent partial disability as provided in section 176.101, subdivision 3, shall be made in the following manner:

(a) If the employee returns to work, payment shall be made by lump sum;

(b) If temporary total payments have ceased, but the employee has not returned to work, payment shall be made at the same intervals as temporary total payments were made;

(c) If temporary total disability payments cease because the employee is receiving payments for permanent total disability or because the employee is retiring or has retired from the work force, then payment shall be made by lump sum;

(d) If the employee completes a rehabilitation plan pursuant to section 176.-102, but the employer does not furnish the employee with work he can do in his permanently partially disabled condition, and the employee is unable to procure such work with another employer, then payment shall be made by lump sum.

This statute did not specifically address the situation in which an employee returns to work but was on temporary partial disability, although section 176.021, subd. 3, did indicate that permanent partial disability was not payable until completion of tempo-

rary partial disability as well as temporary total disability compensation. In 1984, the WCCA ruled in *Moos v. Deltak Corp.*, 36 W.C.D. 687, that payment of permanent partial disability was not due when an employee returned to work but was also on temporary partial disability. Apparently in response, the legislature in 1985 added subdivision 3b to section 176.021 which reads:

If an employee has returned to work for at least six months and has, if applicable, completed a rehabilitation plan, this section does not prevent the payment of compensation for permanent partial disability because the employee is receiving compensation for temporary partial disability. This subdivision is procedural and applies regardless of the date of injury.

The compensation judge in the instant case determined that under subdivision 3b (1986), permanent partial disability was presently payable to employee. The WCCA found that permanent partial disability was presently payable under either subdivision 3 (1981) or subdivision 3b (1986), as employee was receiving no temporary benefits.

Dealing first with the applicability of the 1981 statute, employer/insurer assert that permanent partial disability is not presently payable under section 176.021, subd. 3 (1981). They argue that payment of temporary total/temporary partial disability compensation has not been completed in this case because the 1983 stipulation only foreclosed temporary total/temporary partial disability claims until 1988. Employee argues, on the other hand, that the 1981 statute does not require that all future claims for temporary benefits be foreclosed prior to the payment of permanent partial disability.

Rather than being a matter of statutory construction however, we believe this issue is one of ascertaining the intent of the 1983 stipulation.

The 1983 stipulation provided for a payment of $25,000 as a settlement for claims to temporary total/temporary partial disability compensation and psychiatric care. The stipulation further provided:

5. When the above payments have been made it shall constitute a full, final and complete resolution of all claims for past, present and future temporary total, temporary partial, permanent total, retraining and rehabilitation benefits up to November 9, 1988. In other words, for the period of time up to November 9, 1988 the employee shall be foreclosed from receiving temporary total disability, temporary partial disability, permanent total disability, retraining and rehabilitation benefits and foreclosed from bringing a claim for temporary total disability, temporary partial disability, permanent total disability, retraining and rehabilitation benefits. Furthermore, when payment is made in this case it shall constitute a full, final and complete resolution for all future psychiatric and psychological care, treatment, therapy and counseling, including but not limited to care, therapy and counseling rendered by a psychiatrist, psychologist, medical social worker or any other person or organization rendering services connected with emotional, personality, psychiatric or psychological problems or impairments.

6. The employee's right to receive medical care and treatment from providers other than psychiatrists, psychologists, medical social workers and the like shall remain open. This Stipulation for Settlement shall not affect the employee's right to bring a claim for permanent partial disability subject to the provisions of M.S. 176.021 and 176.101 Subd. 3.

It appears from the language of the stipulation that it was the hope that employer/insurer's obligation for temporary total/temporary partial disability would cease at the time the stipulation was filed. This is supported by the absence of language precluding employee from bringing a claim for permanent partial disability until after 1988. The WCCA found the employee was not currently receiving temporary disability compensation of any type, and this finding is clearly supported by the language of the stipulation. Accordingly, permanent partial disability compensation

was presently payable under the 1981 statute.

The compensation judge and WCCA also believed section 176.021, subd. 3b (1986), allowed concurrent payment of temporary partial and permanent partial disability in this case. However, we do not need to reach this issue since section 176.021, subd. 3 (1981), allowed payment of permanent partial disability by virtue of the 1983 stipulation.[1] We therefore affirm the award of permanent total disability compensation.

■ 2. Employee challenges the WCCA's vacation of the compensation judge's finding that he sustained a 75% permanent partial disability and substitution of its finding of a 30% permanent partial disability. The compensation judge's finding as to the rating of permanent partial disability is one of ultimate fact. *Erickson by Erickson v. Gopher Masonry, Inc.*, 329 N.W.2d 40, 43 (Minn. 1983); *Hosking v. Metropolitan House Movers, Corp.*, 272 Minn. 390, 399, 138 N.W.2d 404, 410 (1965). As such, it must be affirmed by the WCCA if it is supported by substantial evidence. Such evidence is evidence which a reasonable mind might accept as adequate. *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 59 (Minn. 1984). Here, the compensation judge's finding of a 75% permanent partial disability resulting from post-traumatic headaches and depression was supported by the medical evidence as well as objective observations. We therefore conclude that the WCCA exceeded its authority in substituting its finding of a 30% permanent partial disability. Consequently, the compensation judge's finding must be reinstated. *See, e.g., Polaschek v. Asbestos Products, Inc.*, 361 N.W.2d 37 (Minn.1985).

The decision of the WCCA is affirmed in part and reversed in part; the decision of the compensation judge is reinstated.

1. We also note that there may be some constitutional problems with applying the 1985 amendment to a 1981 injury. *See Broos v. Portec, Inc.*, 376 N.W.2d 688, 690–91 (Minn.1985) (retroactive application of a statute to accelerate time for payment of benefits unconstitutionally impairs employer/insurer's vested right to make payments at the time contemplated by the law in effect on the date of the injury).

Employee is awarded $400 as attorney fees on appeal.